UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CHANCEY HATFIELD,  )<br>    *Plaintiff*,  )<br>  )<br>v.  )<br>  )<br>KILOLO KIJAKAZI,  )<br>Acting Commissioner of Social Security  )<br>Administration,  )<br>    *Defendant*.  ) | Case No: 2:22-cv-00032<br><br>Judge Christopher H. Steger |

## MEMORANDUM OPINION

**I.    Introduction**

Plaintiff Chancey Hatfield seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. §§ 401-34. *See* [Doc. 1]. The parties consented to entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 12].

For reasons that follow, Plaintiff's Motion for Judgment Based on the Administrative Record [Doc. 15] will be **GRANTED IN PART**, the Commissioner's Motion for Judgment on the Pleadings [Doc. 18] will be **DENIED**, and the Commissioner's decision will be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g).

**II.    Procedural History**

Plaintiff fell five to six feet off a ladder onto concrete on January 11, 2019. [Doc. 16 at 4]; (Tr. 50). Hospital imaging showed a left calcaneus (heel) fracture. [Doc. 16 at 4]. On May 9, 2019, Plaintiff applied for disability insurance benefits. (Tr. 13). Plaintiff's claim was denied initially as

well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

At a telephonic hearing (due to the COVID-19 pandemic) on October 6, 2020, in which Plaintiff and his attorney both participated, Administrative Law Judge John R. Daughtry ("the ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 13, 34, 42-66). The ALJ then rendered his decision, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 34).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; however, that request was denied. (Tr. 1). Exhausting his administrative remedies, Plaintiff then filed his Complaint [Doc. 1] on March 25, 2022, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing dispositive motions, and this matter is ripe for adjudication.

### III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since January 11, 2019, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

3. The claimant has the following severe impairments: left calcaneus fracture with post-traumatic subtalar osteoarthritis and regional pain syndrome, status post open reduction and internal fixation of the left ankle, left foot paresthesia, and obesity (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a) that is limited to: lifting and/or carrying up to or about ten pounds occasionally and frequently; standing and/or walking up to or about two hours, and sitting up to or about six hours in eight-hour workdays with normal breaks, occasional pushing and pulling with the left lower extremity; occasional climbing of stairs or ramps, or balancing; no climbing ladders, ropes, or scaffolds, kneeling, crouching, or crawling; frequent stooping; occasional exposure to extremely hot or cold temperatures; and avoidance of workplace hazards such as unprotected heights and dangerous moving machinery.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on November 3, 1981, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Pt. 404, Subpt. P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 11, 2019, through the date of this decision (20 C.F.R. § 404.1520(g)).

(Tr. at 15-34).

### IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, he is not disabled; (2) if a claimant does not have a severe impairment, he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, he is disabled; (4) if the claimant is capable of returning to work he has done in the past, he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, he is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. *Id.*; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health*

*and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's findings must be affirmed if substantial evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner "merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (internal quotation omitted); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.     **Analysis**

Among other claims, Plaintiff states that "[t]he ALJ erred at step three of the sequential analysis by failing to properly evaluate the evidence in determining that [Plaintiff] does not meet

listing 1.06." [Doc. 16 at 1]. At step three of the evaluation process, the ALJ "must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment [found in the Listings]." (Tr. 14). Plaintiff concedes that "[i]t is the claimant's burden to bring forth evidence at Step Three to establish that their impairments meet or are medically equivalent to a listed impairment." [Doc. 16 at 17].

Here, the ALJ found that "[Plaintiff's] left calcaneus fracture with post-traumatic subtalar osteoarthritis and regional pain syndrome with left foot paresthesia does not meet or medically equal either Listings 1.02 or [] 1.03." (Tr. 20). Plaintiff claims the pertinent inquiry should be under Listing 1.06, but he concedes the relevant analysis is the same under Listings 1.02, 1.03, and 1.06.[1] [Doc. 16 at 13]. The parties agree that the question is whether Plaintiff can "ambulate effectively, as defined in 1.00B2b." *See* [Doc. 16 at 13-14, Doc. 19 at 15]. The parties also agree that, under 1.00B2b, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." [Doc. 16 at 17, Doc. 19 at 16].

Specifically, Plaintiff states that in step three of the analysis, the ALJ erred in his evaluation of medical records from Eric Delay, M.D. [Doc. 16 at 14]. Related to Dr. Delay's treatment of Plaintiff, the ALJ stated:

> While claimant's orthopedic records note that the claimant reported some problems bearing weight during the relevant period, the record also shows that when he has presented for examinations by orthopedists without specific regard to his left lower extremity, his physical exams have not shown the degree of limitation that he has alleged. For example, Eric Delay, MD, with Healthstar Physicians, who has seen the claimant during the relevant period, has reported largely normal physical exam findings (see Exhibits 5F and 9F).

---

[1] Since the ALJ's decision, the Social Security Administration revised evaluation of "claims involving musculoskeletal disorders in adults and children under titles II and XVI of the [Act]." Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 FR 78164, 78164 (Dec. 3, 3030), online at https://www.federalregister.gov/documents/2020/12/03/2020-25250/revised-medical-criteria-for-evaluating-musculoskeletal-disorders (last visited September 18, 2023). The new rules do not apply to Plaintiff's case.

In June 2019, Dr. Delay reported that the claimant was using his walking boot for his left foot, but he was "ambulating normally." Furthermore, the claimant had normal gait and station, grossly intact cranial nerves, and he had normal sensation and reflexes (see Exhibit 5F, page 3).

In fact, the claimant's physical exams with Dr. Delay following the January 2019 surgeries were each generally normal (see Exhibit 5F, pages 5 and 7, and Exhibit 9F, pages 4, 6-7, 9, 11, and 13). Moreover, in February 2019, not long after his second left lower extremity surgery in January 2019, Dr. Delay noted the claimant's heel fracture was "healing fairly well" and that "sensation seems to be intact" (see Exhibit 5F, page 9).

(Tr. 19-20).

For clarity, the various portions of the record cited by the ALJ cover five visits by Plaintiff to Dr. Delay, as summarized in the table below.

| Date of Visit | Record Locations | Comment |
|---|---|---|
| 2/1/19 | Ex. 5F, p. 6-9, and Ex. 9F, p. 11-15 | Ex. 5F, p. 9, and Ex. 9F, p. 15, are both copies dated 2/5/19 of an addendum by Dr. Delay for the 2/1/19 visit |
| 4/17/19 | Ex. 5F, p. 4-6, and Ex. 9F, p. 9-11 | |
| 6/3/2019 | Ex. 5F, p. 2-4, and Ex. 9F, p. 7-9 | |
| 11/5/19 | Ex. 9F, p. 5-7 | |
| 12/30/19 | Ex. 9F, p. 3-5 | |

The Court finds that the ALJ erred in two ways. First, with respect to the record that was available to the ALJ, the Court cannot find anything in that record indicating that Dr. Delay is an orthopedist. On the contrary, the record indicates that Dr. Delay is likely a primary care physician. For instance, at the 2/1/19 visit, Dr. Delay noted Plaintiff had broken his left heel falling off a ladder and that "[h]e goes back for follow up on Monday" (Tr. 418, 552) (suggesting that Plaintiff was going back to the orthopedic surgeon who was treating him for his injured heel). Additionally, before Plaintiff's ladder fall, Dr. Delay treated Plaintiff for gastroesophageal reflux disease without esophagitis and noted Plaintiff was "here today to establish care with [an] MD." (Tr. 560-62). Even after Plaintiff's ladder accident, Dr. Delay treated Plaintiff for a host of other medical issues

including adjustment disorder, insomnia, depressive disorder, and genital warts. (Tr. 543-51). These are maladies that would not be addressed by an orthopedist.

Second, the ALJ impermissibly cherry-picked evidence from Dr. Delay's treatment notes. An ALJ is not "required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010). However, a decision should not be affirmed if the ALJ "selectively considered the evidence in denying benefits." *Grames v. Comm'r of Soc. Sec.*, 815 F. App'x 820, 823 (6th Cir. 2019) (quoting *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004)). The Commissioner must "consider all of the available evidence, including [Plaintiff's] medical history." 20 C.F.R. § 404.1529. Put another way, the ALJ is obligated to consider the entire record. *Hurst v. Secy'y of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985). "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 880 (N.D. Ohio 2011) (citing *Bryan v. Comm'r of Soc. Sec.*, 383 Fed. Appx. 140, 148 (3d Cir. 2010)).

In *Grames*, the Sixth Circuit remanded a denial of benefits because of, in part, improper cherry picking by the ALJ. 815 F. App'x at 823, 826. Significantly, the ALJ in *Grames* supported the denial of benefits by citing certain evidence from medical appointments while ignoring contrary evidence *from those same appointments*. *Id.* at 823-24.

Here, there ALJ accurately cited a good deal of information from the five visits with Dr. Delay that supported his conclusion regarding ineffective ambulation. However, the ALJ ignored contrary evidence from those same appointments, as seen in the table below.

| Date of Visit | Information Ignored by the ALJ |
|---|---|
| 2/1/19 | "He is now in a splint and hoping to be in walking boot. He is hopefully be able to put some pressure on it in about a month." (Tr. 421, 555). <br> "left foot and ankle in splint" (Tr. 419, 553). |
| 4/17/19 | "left foot and ankle in splint" (Tr. 417, 551). <br> "Still have a lot of problem with his left heel still not healing as well. There is still some debate about whether or not he may have an ankle fusion." Tr. (417, 550). <br> "He states his left heel still hurts, not healing well." (Tr. 416, 550). |
| 6/3/19 | "He is looking at an ankle fusion in the next month." (Tr. 415, 548). <br> "He will be scheduled for another surgery in July/August." (Tr. 414, 548). |
| 11/5/19 | "left foot in walking boot with scooter" (Tr. 547). <br> "He says that his surgeon is wanting him to be referred to pain management. . . He is at the point where his foot isn't getting any better, and it is getting worse and he is frustrated and curious whether or not amputation would be an easier route to help it get better." (Tr. 545, 546). |
| 12/30/19 | "left foot in a walking boot with scooter" (Tr. 544). <br> "Surgeon wants him to see a pain management to see if there is any other thing that can be done for the nerve pain at least through intervention before they talk about a fusion." (Tr. 544). |

The ALJ's reference to the fact that "the claimant reported some problems bearing weight during the relevant period" is the only possible mention of the information in the immediately preceding table. But there is no citation to pinpoint what the ALJ is referencing. And even if that were the ALJ's attempt to discuss the contrary information, it is far too cursory and incomplete.

The ignored treatment notes from the 11/5/19 and 12/30/19 visits carry particular weight. The ALJ cited the 6/3/19 visit, stating that Plaintiff was "ambulating normally" and "had normal gait and station." (Tr. 19). But the notes from 11/5/19 visit state that Plaintiff's foot was "getting worse," and that he was exploring amputation. Additionally, the mention of a scooter[2] in both the 11/5/19 and 12/30/19 visits greatly conflicts with the ideas of normal ambulation and normal gait and station. The fact that the ALJ did not address this conflict is even more concerning considering

---

[2] The Court finds that using a scooter is more like using a wheelchair, walker, two crutches, or two canes, than it is like using one crutch or one cane. Scooter handles have grips for both hands and are designed to generally be used with both hands on the grips. Thus, the need to use a scooter would be strong support for that Plaintiff has "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

that both the 11/5/19 and 12/30/19 notes also state that Plaintiff was "ambulating normally" and had "normal gait and station." (Tr. 543-47). While the existence of such a conflict is not dispositive regarding ineffective ambulation, the ALJ erred by not addressing it.

The effect of the ALJ's errors is considerable. The ALJ implied Dr. Delay was an orthopedist and that this added to the persuasiveness of his finding that that Plaintiff's "physical exams have not shown the degree of limitation that he has alleged." While the specific degree of persuasiveness is not specified, it was the core tenet of the paragraph. The ALJ then proceeded to selectively cite physical exam notes that undermined a finding of ineffective ambulation, while ignoring contrary material from those same notes. And the overlooked material was relevant and weighty. For example, use of a scooter almost a year after the alleged onset date is very strong evidence in favor of ineffective ambulation.

Considering the significance of the errors made by the ALJ and the impact of those errors on the decision, remand is warranted.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 15] is **GRANTED IN PART**, the Commissioner's Motion for Summary Judgment [Doc. 18] is **DENIED**, and the decision of the ALJ is **REMANDED** for reconsideration.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE